All right, our next case, last case of the day is United States v. Dawson, No. 20-1233. Let's see, we have Mr. Saltzman up first. Can you see and hear us all right? Yes, Judge. And Mr. Rojas, can you see and hear us all right? Yes, Your Honor. Thank you. Okay, terrific. Mr. Saltzman, please proceed. Steven Saltzman, on behalf of Mr. Dawson, I'm reserving three minutes for rebuttal. The district court ignored or was dismissive of the rule that the court should sanction primarily the defendant's breach of trust while taking into account to a limited degree the seriousness of the underlying violation in the criminal history of the violator. We know, in fact, he was openly dismissive of that rule. Mr. Saltzman, can I ask you, you're calling it a rule, right? As I understand it, this is guidance from the, this is policy guidance from the Sentencing Commission, right? Yes, Judge. You're correct. It's policy guidance from the Sentencing Commission. But it wasn't, he was openly dismissive of it and ignored it and said, well, really openly dismissive. First and foremost, and he asked me a question, first and foremost, as a breach of trust, do you interpret this to mean that I should take into account what the defendant actually did? That, for example, missing a urine drop should not have the same effect as shooting somebody in terms of a violation? Uh, that really misses the point. And what goes on further is, while Section 3583E makes, does not list the seriousness of the crime as one of the 3553A factors to be considered in determining a sentence for supervised release violation, the introduction to Chapter 7 makes clear that the court may consider it. As long as, and this court has said, as long as this district, as long as the court relies primarily on the factors listed in 3583A, E, excuse me, the Section 3553A2A may be considered. But here the court didn't simply consider it, the seriousness of the crime. It was his complete focus. In announcing his decision, the court said, I just find, regarding the possession of the firearm in his brother's car, I just find that this is too serious of conduct for this court to do anything but impose a significant custodial sentence. Mr. Salzman, what? Mr. Salzman, the 3583, as you noted, sets forth the statutory factors that courts are directed to look at in revoking supervised release. And you're correct that it does not point to the seriousness of the offense. But it does specifically include deterring future crimes, protecting the public. And it was clear from the district court's commentary during the sentencing here and the revocation that he was very concerned about protecting the public because of the gun in Chicago in these circumstances. Why isn't that when I was quoting him? In announcing the decision, court said, I just find that this is too dangerous of conduct for this court to do anything but impose a significant custodial sentence. And I find that the guidelines in this case do not accurately reflect the seriousness of the offense. I'm going to enter a sentence above the guidelines for that reason. And again, the whole point, and this goes to my next point, the whole theory that the judge had as to why the seriousness of the offense was so important in protecting the public was because the Cook County court system wasn't going to do anything. He was playing the role of a sentencing judge in a gun violation case rather than a sentencing judge in a supervised release. But looking at the sentencing as a whole and the judge's comments as a whole, he makes clear that he is addressing this because of the supervised release violation and the violation of the court's trust in placing him on supervised release. And isn't the severity of an offense directly relevant to the breach of trust? For example, isn't it more of a breach of five minutes late on a curfew? Isn't that something that would be perfectly permissible? I'm not arguing that, Judge. The point here is this was his whole focus and it was his focus because he had to do the job that the circuit court of Cook County wasn't going to do. But I guess that's my point. Looking at the transcript as a whole, it doesn't seem that that was his whole focus. It seems that he, again, looking at it as a whole and all of his comments and the need to protect the public, that while he was concerned about the seriousness of the offense, he was linking it to very appropriate factors that he's supposed to look at. As I just said, quoting him, he said something different, Judge. But in addition, Mr. Saltzman, before you go on to another topic, in keeping with Judge St. Eve's question, didn't it bother the district court that your client cut the bracelet? And isn't cutting the bracelet a pretty serious breach of trust with the probation office? You mean putting the mechanism, the electronic monitor ring in his car? Well, no, no, no. The bracelet wasn't on his ankle when they found it, where it was supposed to be. No, I think that's wrong, Judge. I think the issue was that he'd taken the electronic monitoring device and put it to a battery and put it in his trunk. Well, is that where it's supposed to be? Of course not, Judge. Well, isn't that the... I thought that's at least the way I read the transcript. I mean, I understand your primary argument, but I think there's a risk in saying that there's nothing in the transcript that addresses a breach of trust, because the cutting or whatever happened with the bracelet, I think Judge Guzman viewed as a breach of trust. Well, Judge, if I may just quickly conclude here, because I want to reserve my time. The district court ignored the recommendations of the AUSA and the probation officer. He ignored the positives in Mr. Dawson's life, that is, how hard he was working, he was taking care of his child to be his mother, he was supporting a niece whose husband, whose father had died. He didn't ignore those factors. He acknowledged them. He just thought that a higher sentence was more appropriate for a variety of reasons that he articulated. Certainly, you can't be suggesting that district courts have to follow the recommendations of the probation officer for sentencing. No, but one would think, Judge, when you have both a probation officer and an AUSA making the same recommendation, that he would at least ask, why did you come to that conclusion? Let me make one additional point. I'm running into my time, but one additional point. And that is that when the district court indicated that he believed he was required to make the sentence consecutive to the anticipated state court sentence, defense counsel informed him that the USSG provision said that, but the applicable statute, section 3583, did not. The court basically said it made no difference because his focus was on punishing Mr. Dawson for the criminal conduct of possessing a firearm. I think all of those factors together make this procedurally improper. And I'll end there. Thank you, Mr. Saltzman. For the government, Mr. Rojas. May it please the court. My name is David Rojas and I represent the United States. The district court sentence here was procedurally sound and substantively reasonable. The district court properly considered the factors set forth in section 3553A as referenced by section 3583, as well as the advisory policy statements governing revocations of supervised release in imposing above guideline sentence. As the court recognizes, the policy statements are advisory guidance by the Sentencing Commission. 3583 is the statutory mandate governing revocation of supervised release. Section 3583 requires the district court to fashion a sentence that takes into account the need to deter the defendant and others and to protect the public, which inherently calls for consideration of the violation and its context. I think, Mr. Rojas, I think you would agree that the purpose of a supervised release violation revocation is supposed to be a sentence for a breach of the court's trust. Do you agree with that? Yes, Your Honor. And those factors that are in 3583 help guide the appropriate sentences for that breach of trust. How is a court supposed to draw a line or differentiate between sentencing for breach of the court's trust versus sentencing for punishment for the underlying violation that caused the breach? Yes, Your Honor. As Your Honor states, the primary purpose of a revocation sentence is to consider the nature of how the defendant violated the court's trust. And that is, in fact, what the district court did here. Through his language, he did consider being found with a loaded firearm while on supervised release and tampering with his electronic monitoring device as a serious breach of the court's trust. In fact, he said that the defendant had shown a serious lack of respect for the overarching context of the breach of the court's trust. But it is informed by the factors within 3553A. But where's the line? When does a court go too far on sentencing on a supervised release violation when it's clear he's punishing for the underlying offense? How do we make that determination? Your Honor, I apologize. I can't think of a bright line that would necessarily divide the two. But instead, it's about the framework and the purpose of the district court's analysis when coming to its determination about the sentence. Another factor that the court must consider and the district court did consider here is the advisory policy statement range of sentence. And that differs from a guideline sentence, which may be higher than the advisory policy statement range for revocation. But it's just a different framework that does overlap with a substantive offense analysis. If the district court had made the comments at sentencing about essentially the lack of the states really pursuing these gun violations at the revocation hearing, would that have gone too far? Your Honor, I do not believe that it would have gone too far depending on the context of the statements. I do believe that in this case, those statements were not in the context of the revocation and sentencing hearing. But it is an appropriate consideration for district court to determine what deterrence a defendant has under 3553 and 3583. So within that context, it is an appropriate consideration to know what a state court might determine. But would it violate any legal rule, Mr. Rojas, if a district judge said, look, supervised release has very little to do with trust on the part of the court. It's an experiment. It's a common part, sometimes a mandatory part of sentences. But it's not because I'm not issuing the sentence or administering this part of the sentence because I trust the defendant. It's because I don't. We have all this monitoring in place because we don't trust the defendant. And this guy, Mr. Dawson, broke the rules, showed that he can't be trusted, and I need to protect the public. Would that be contrary to law? Your Honor, I do not believe that would be contrary to law or statute. The advisory policy guidelines do focus on the idea of breach of trust, but those are just the things that the court should consider. But ultimately, the statutory factors that govern what the court determines are set forth in 3553A. In addition, the way I understand what Your Honor was stating was that such a district court would be upset that the defendant was breaking the rules, was not following the court's trust. And in that case, that is within the framework of the advisory policy statements. The district court also properly considered the seriousness of the violations, and this is a proper consideration for the district court. Although the defendant did have what the district court characterized as technical violations, such as a positive drug test, it was the defendant's unlawful possession of a firearm that the district court characterized as a danger to the community. The firearm itself was a nine-millimeter Glock. It was semi-automatic. It was loaded. It had an extended cartridge. It was more than fair for the district court to characterize that this weapon that the defendant possessed was a killing machine. In light of all of these facts, the district court properly and reasonably concluded that a within policy statement range sentence would not have been sufficient to deter the defendant or others or to protect the public. In addition, the district court did not err in imposing a consecutive sentence, and this was consistent with the guidelines recommendation that revocation sentences should be imposed consecutive to underlying sentences. And as we've been discussing, that does make sense with the purpose, the primary purpose of revocation sentences. They are to punish a defendant's breach of the court's trust. And so a consecutive sentence would allow for a revocation sentence to serve that additional purpose. That would make more sense if this sentence were more clearly aimed at the breach of trust part of things rather than protection and deterrence. I mean, I think he looked like Judge Guzman was expecting no sentence from the state courts. Your Honor, I do believe that the record reflects that district court strongly considered the breaches, the multiple breaches of trust that the defendant committed, including the unlawful possession of firearm, tampering with electronic monitoring equipment, as well as the recidivist nature of his supervised release violations. Those two events didn't occur at the same time, but instead over the course of months. So among other factors, the district court properly considered all of these things in fashion in a book-like sentence. So unless the court has any further questions, I'll end by asking the court to affirm the defendant's sentence. Thank you, Mr. Rojas. Mr. Saltzman, rebuttal? Yes, Judge. When the district court goes too far, when it focuses, as it did a month before, on the judges in Chicago aren't going to do anything, and there's references to what he says on the 27th of January that's similar. This was a predetermined sentence. It was the maximum possible sentence that could be imposed. The guidelines are six to twelve months, but it's consecutive. The statute allows up to 24 months, but it doesn't say anything about it having to be consecutive. So this was the maximum possible sentence that could have been imposed. And I'd ask, in my brief I referenced the U.S. v. DuPriest, in which the court dealt with, frankly, much worse situations, and the judge in the supervised release only made half of that sentence consecutive. Here what we have is a situation, and the other thing about the firearm, and I understand I have no shot to say the firearm finding should be overturned, but the evidence is the firearm was in the brother's car. Mr. Dawson was sitting in the front seat. The officers testified he leaned down. He leaned down when the car was stopped by the officers. And when I asked the officers, do you know whether his brother told him to lean down to push something in the back, the answer was no. So in a certain sense, I think this has been blown out of proportion. It's one thing if there was some history that Mr. Dawson was involved in stuff like this, then I would understand it. But I think because this is a predetermined sentence that really ignores the guidance on punishing, on what Mr. Dawson should be punished for, and just goes off and says he's doing it for another reason, for a reason he's not allowed to, the seriousness of the violation, I think this court needs to reverse this and send a message to the lower courts. All right. Thanks to both counsel. And our case is taken under advisement here. And of course, the court will be in recess until tomorrow. Thanks very much. Thank you.